1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    DENISE STEFFENS,                          CASE NO. 08cv1494-LAB (BLM)

12                         Plaintiff,           **ORDER ON SUMMARY**
                                                **JUDGMENT**
             vs.
13

14    REGUS GROUP, PLC; REGUS
      MANAGEMENT GROUP, LLC; REGUS
15    EQUITY BUSINESS CENTERS, LLC;
      REGUS BUSINESS CENTER, LLC; HQ
16    GLOBAL WORKPLACES, LLC; THE
      REGUS GROUP, PLC; SANDE
17    GOLGART; SHARON EDMONDSON;
      and DOES 1-10,
18
                         Defendants.
19

20

21          Denise Steffens alleges that her former employer, Regus Management Group, fired

22   her on account of her age and because of her complaints that it was violating California labor

23   laws.  Her complaint advances three causes of action: (1) retaliation for whistleblowing in

24   violation of California Labor Code § 1102.5; (2) age discrimination in violation of California's

25   Fair Employment and Housing Act, California Government Code § 12940; and (3) wrongful

26   termination in violation of public policy.  Now before the Court is Regus's motion for summary

27   judgment.

28   //

## I.    Background

Regus leases office space — "furnished, equipped and staffed" — to companies without space of their own. (Br. at 3.) One of its centers occupies two floors of the Emerald Plaza hotel building in downtown San Diego. Until her termination that is the subject of this case, Steffens was the General Manager of the Emerald Plaza center. She previously worked for HQ Global Workplaces, a Regus competitor that Regus acquired in August 2004. (JSUF ¶¶ 2–3.) As General Manager, Steffens reported to Area Director Shannon Jones and Regional Vice President Sande Golgart. (JSUF ¶¶ 10, 12.)

Steffens alleges that in 2004, Regus took the official position that its hourly employees were not entitled to meal and rest breaks, or overtime pay, and that she voiced opposition and was ignored. (FAC ¶¶ 20–21.) Specifically, she alleges that in October 2006, in a meeting with Jones and Golgart, she insisted Regus's policy was illegal, but that they "remained quiet and did not respond to the issues raised by Ms. Steffens." (FAC ¶ 22.) Then, on April 11, 2007, Steffens was placed on a performance improvement plan giving her 60 days to improve her performance. (JSUF ¶ 7.) According to Steffens, this plan not only imposed unrealistic goals, but was unjustified given her past performance and was also inconsistent with Regus's own protocol for disciplining employees. Worst of all, it was "nothing more than a clumsy attempt by Defendants to provide a paper trail for Regus should Ms. Steffens pursue litigation in the future." (FAC ¶ 41.) Regus fired Steffens on July 5, 2007. (JSUF ¶ 8.)

## II.    Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving party, it is Regus's burden to show there is no factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, Regus must show that Steffens lacks evidence to support her case. *Id.* at 325. If it makes that showing, Steffens must go beyond the pleadings and set forth "specific facts" to show a genuine issue for trial. *Id.* at 324.

1   The Court considers the record as a whole and draws all reasonable inferences in the

2   light most favorable to Steffens. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531

3   (9th Cir. 2000). The Court may not make credibility determinations or weigh conflicting

4   evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court

5   determines whether the record "presents a sufficient disagreement to require submission to

6   a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at

7   251–52. Not all alleged factual disputes will serve to forestall summary judgment; they must

8   be both material and genuine. *Id.* at 247–49. "If conflicting inference may be drawn from

9   the facts, the case must go to the jury." *LaLonde v. County of Riverside*, 204 F.3d 947, 959

10   (9th Cir. 2000) (citations omitted).

11   **III.   Discussion**

12   The Court will consider each of Steffens's three claims in the order they are presented

13   in her complaint.

14   **A.   Whistleblowing Claim**

15   Steffens alleges that Regus retaliated against her for whistleblowing in violation of

16   California Labor Code § 1102.5(b). That section provides:

> An employer may not retaliate against an employee for
> disclosing information to a government or law enforcement
> agency, where the employee has reasonable cause to believe
> that the information discloses a violation of state or federal
> statute, or a violation or noncompliance with a state or federal
> rule or regulation.

21   Generally speaking, this section "concerns employees who report to public agencies" and

22   does not protect employees who relay concerns directly to their employer. *Green v. Ralee

23   Engineering Co.*, 19 Cal.4th 66, 77 (1988); *see also Bursese v. PayPal, Inc.*, 2007 WL

24   485984 at *9 (N.D. Cal. 2007). Steffens concedes she didn't report Regus to a public

25   agency, but argues that under *Lujan v. Minagar*, 124 Cal.App. 4th 1040 (2004), an employer

26   is prohibited from retaliating against an employee out of *fear* that he or she will report

27   unlawful activity. The Court reserved on this very question when it denied Regus's motion

28   to dismiss. (*See* Doc. No. 13, p. 11.)

The plaintiff in *Lujan* was a salon employee who, by the employer's own admission, was fired for fear that she would report workplace safety violations to the government. *Lujan*, 124 Cal.App.4th at 1043. The statute at issue in *Lujan* was not section 1102.5(b), but an analogous Labor Code section — section 6310 — under California's Occupational Safety and Health Act. It provides:

> (a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: (1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative; (2) Instituted or caused to be instituted any proceeding under or relating to his or her rights or has testified or is about to testify in the proceeding or because of the exercise by the employee on behalf of himself, herself, or others of any rights afforded him or her.

Notwithstanding Steffens's argument that an expansive reading of section 1102.5(b) is in the public interest, the Court is hesitant to extend the analysis in *Lujan* to this case and read a prohibition on preemptive retaliation into section 1102.5(b). By its own terms, section 1102.5(b) is concerned only with disclosures "to a government or law enforcement agency" that may provoke an employer to retaliate against an employee. Section 6310 isn't so limited; like section 1102.5(b), it protects employee complaints to government agencies, but it *also* protects complaints to employers, and to representatives. Steffens points to *Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1255 (2008), in which the court extended the *Lujan* analysis to an anti-retaliation provision of California's Fair Employment and Housing Act, California Government Code § 12940, observing, "[e]mployer retaliation against employees who are believed to be prospective complainants or witnesses for complainants undermines th[e] legislative purpose just as effectively as retaliation after the filing of a complaint." But like Labor Code section 6310, section 12940 is not limited in its terms to complaints to government agencies, and actually covers complaints directly to employers. The section makes it unlawful

> [f]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a

1   complaint, testified, or assisted in any proceeding under this
2   part.

Steffens asserts that the differences between sections 1102.5(b) and 6310 are minor, but

the Court disagrees.  The fact is that section 1102.5(b) doesn't stack neatly onto sections

6310 or 12940, and to the extent this reflects a varied legislative purpose, it is reason

enough for the Court to decline to extend the holding of *Lujan* to claims brought under

section 1102.5(b).  This is not to say that a California court, presented with the opportunity,

wouldn't find that section 1102.5(b) prohibits preemptive retaliation, but in the absence of

such a holding the Court declines Steffens's invitation to break new ground.[1]

Ultimately, though, the Court's unwillingness to extend *Lujan* doesn't prejudice

Steffens, because the Court doesn't believe she can prevail on her whistleblowing claim

even if she needed only to show that Regus was *afraid* she'd report her concerns to the

government.  Steffens repeatedly asserts in her complaint that Regus terminated her out of

fear that she would take her complaints to "the appropriate outside enforcement agencies."

(*See* FAC ¶ 14, 24, 30, 40, 48.)  But the evidence of this is extremely thin.  There's no doubt

that Steffens alleged, in her October 2006 meeting with Jones and Golgart, that Regus's

refusal to provide meal and rest breaks violated California law.  (*See* Steffens Dep. 94:6–10,

108:14–18.)  But Steffens admitted in her deposition that she did nothing following the

meeting to let on that she might report Regus to the government:

> Q:   Did you write anything down memorializing what happened?
>
> A:   No.
>
> Q:   Did you call anybody to tell them what happened?
>
> A:   No.
>
> Q:   Did you tell Mr. Jones and Mr. Golgart that you were

---

[1]  The Court would add that section 6310 protects employees who report safety violations, and safety violations may, by their very nature, remain hidden from public officials unless a whistleblower brings them to their attention.  Regus's meal and rest break policy for hourly employees, however, is presumably information available to all Regus employees and even the public.  The point here is simply that it's plausible that whistleblowers who report safety violations require *more* protection than a whistleblower like Steffens, and accordingly, section 1102.5 shouldn't be read as expansively as section 6310.

1    going to call somebody and report on what you all
     discussed that day?
2

3    A:    No.

4    Q:    On your own, did you call human resources and explain
           an odd meeting where you   just told both of your
5          superiors that they violated California law and they got up
           and walked out of your building without a word?
6
     A:    No.
7
     Q:    Did you call [...] the general counsel of the company and
8          relay any information about that meeting?

9    A:    No.

10   Q:    Did you call any outside agency and inform them about
           the discussion you just had with both your superiors
11         about what happened at that meeting?

12   A:    No.

13   Q:    Did you threaten to do that at all?

14   A:    No.

15   (Steffens Dep. 110:22–111:20.)  The following testimony also suggests that Steffens took

16   no action that would tell Regus she was prepared to report their allegedly unlawful policies:

17   Q:    Given that you were at that time concerned about your
           future employment because you had raised these issues
18         in this meeting with Mr. Jones and Mr. Golgart, did you
           inform anyone about your concerns?
19
     A:    Not that I recall, no.
20
             . . .
21
     Q:    Did you call any other GM and say, wow, I just had a
22         weird meeting with Shannon Jones and Sande Golgart in
           my office and I brought up these issues of violation of
23         California labor law and they both got out without a word
           and walked out of my building and now I'm concerned
24         about my job.  Did you call any other San Diego GM and
           say anything close to that?
25
     A:    At this time, I don't recall that I did.
26
             . . .
27
     Q:    Who were the other San Diego GMs at that time?
28
     A:    Let's see.  I believe it would be — I'm trying to remember

1       who was in each center.  It would be Kathy Crispi.  And
        I'm trying to remember.  I don't remember who was in the
2       Cornerstone Center in Carlsbad.  Kathy Crispi I believe
        was in Pacific Center.   I don't recall who was in
3       Cornerstone.   And Del Mar I believe it was Abegale
        Flores.

4
        Q:    Do you recall calling Abegale and saying I'm really
5             concerned; I just had a weird meeting?

6       A:    No, I didn't call Abegale that I recall.

7       Q:    Did you call the GM in Carlsbad?

8       A:    No.

9       Q:    Kathy Crispi?

10      A:    Crispi.

11      Q:    Did you call her?

12      A:    No.

13      Q:    There's a one-eight number at Regus you call? A hotline
              number?
14
        A:    I don't recall at that time if that was still the way we called
15            HR.  I believe so it was a one-eight hundred number.

16      Q:    You were aware of it?

17      A:    Yes.

18      Q:    Okay.  Did you call that number?

19      A:    No.

20      Q:    Did you call corporate office and express any of your
              concerns?
21
        A:    No.
22
        Q:    Did you call any outside agency at that time after the
23            pipeline discussion with Mr. Jones and say I'm concerned
              about losing my job because of some issues I brought
24            forward to my superiors?

25      A:    No.

26  (Steffens Dep. 114:18—117:1.)  Steffens's response to the argument that she did nothing

27  to convey an intent to report Regus is that, under *Lujan*, she doesn't have to.  What matters

28  is what an employer *believes* an employee might do, not what that employee actually does

1    to inform that belief. She argues: "In *Lujan*, the plaintiff testified that she . . . did nothing to

2    put the employer on notice that she might complain to an outside government

3    agency . . . . The *Lujan* court, despite the plaintiff having done nothing to invoke fear on the

4    part of the employer, still found that the employer engaged in preemptive termination . . . ."

5    (Opp'n Br. at 20.) But that's a misleading reading of the case. The Court in *Lujan* didn't look

6    at the plaintiff's conduct because it didn't need to; the defendant salon owner *admitted* she

7    fired the plaintiff "because . . . I [was] afraid she will be next one to report me." *Lujan*, 124

8    Cal.App.4th at 1043. The Court is not taking the position that Steffens's failure to convey

9    an intent to report Regus forecloses the possibility that her subsequent termination was

10   motivated by fear that she would do so. It certainly cuts against her case, though, and forces

11   the Court to look for other evidence that Regus terminated her because it was afraid she'd

12   report the company to an outside government agency.

13       The only evidence Steffens points to is the admission of Shannon Jones that after he

14   and Sande Golgart met with Steffens in October 2006 Golgart asked him to replace her.

15   (*See* Jones Dep. 118:13–25, 238:8–19, 248:9–20, 287:5–15.) All that the temporal proximity

16   between the October 2006 meeting and the initiation of Steffens's termination suggests,

17   however, is that the October 2006 meeting had *something* to do with the decision to

18   terminate her. Beyond that, it is a matter of guesswork why, exactly, Regus reached the

19   decision it did. Maybe Golgart wasn't impressed with Steffens on a personal level. (*See*

20   Jones Dep. 248:13–20.) Maybe he was disappointed in her sales performance and didn't

21   leave the meeting optimistic about her potential to improve. (*See* Steffens Dep. 95:17–21,

22   101:10–102:1.) Maybe he didn't appreciate her complaints about staffing issues. (*See*

23   Steffens Dep. 105:11–18, 107:8–20.) Whatever the explanation, the Court disagrees,

24   emphatically, with Steffens's argument that "Defendant's actions immediately following Ms.

25   Steffens' complaint [ ] demonstrate its fear that she would next report its illegal practices to

26   an outside public agency." (Opp'n Br. at 21.) That is pure speculation, and

27   "[s]peculation . . . can never create a genuine triable issue." *United States v. Los Angeles

28   County*, 588 F.2d 1308, 1311 (9th Cir. 1979). *See also Guidroz-Brault v. Missouri Pacific*

1  *R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) ("To survive summary judgment the plaintiffs

2  have the burden to produce some evidence, other than speculation or guesswork . . . .");

3  *Nelson v. Pima Cmty Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and

4  speculation do not create a factual dispute for purposes of summary judgment.")

5         The Court would also add, as Regus points out, that on Steffens's own account the

6  October 2006 meeting was not the first occasion on which she complained about Regus's

7  policy of not providing meal and rest breaks to hourly employees.  In her complaint, she says

8  she voiced concerns in 2004, after then Area President Nancy Sauer announced this policy

9  during a conference call.[2]  (FAC ¶¶ 20–21.)  She reiterated this in her deposition testimony.

10  (Steffens Dep. 44:11–45:8; 70:25–72:22.)  The fact that Regus was aware of Steffens's

11  complaint for years before the October 2006 meeting and took no action against her

12  undercuts her argument that something about the meeting set Regus off, and instilled a fear

13  in the company that she would report it.  This is especially true considering there is no

14  evidence that her complaints intensified over time.  Indeed, her complaints weren't even the

15  subject or focus of the October 2006 meeting, but merely one of several responses she had

16  to Golgart's queries regarding the performance of the Regus facility she managed.

17         For the reasons above, the Court finds no triable issue of fact as to whether Regus

18  terminated Steffens for fear that she would report its meal and rest break policy to an outside

19  government agency.   Steffens's whistleblowing claim is therefore **DISMISSED WITH**

20  **PREJUDICE.**

21         **B.    Age Discrimination Claim**

22         The Court now turns to Steffens's second cause of action, which alleges age

23  discrimination under California's Fair Employment and Housing Act.  This cause of action

24  takes a clear backseat to Steffens's whistleblowing claim in her complaint.  (*See* FAC ¶ 1

25  ("Ms. Steffens' termination was also a result of employment discrimination.").)  In fact, she

26  devotes just two paragraphs to its factual bases.  (*See* FAC ¶¶ 44–45.)  First, Steffens was

27

28         [2] In Steffens's opposition brief, she maintains that this conference call took place not in 2004 but in 2003.  (*See* Opp'n Br. at 8.)

1  52 when she was terminated by Regus.  Second, she alleges that she was "told directly by

2  Regus's management that her age was a significant factor in its decision to abruptly

3  terminate her notwithstanding her continued success with the company." (FAC ¶ 45, 57, 64.)

4  The latter allegation is suspect, considering that it appears nowhere in the discovery or in

5  Steffens's opposition brief, *and* considering that Steffens indulges in the burden-shifting

6  analysis below, which she would not be obliged to do if she actually had direct evidence of

7  discrimination.  *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354 (2000).

8      Steffens's age discrimination claim is subject to burden-shifting test set forth in

9  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Sandell v. Taylor-Listug, Inc.*,

10  188 Cal.App.4th 297, 307 (Cal. Ct. App. 2010).  First, she must present sufficient evidence

11  to establish a prima facie case that she was the victim of discrimination.  If she can do that,

12  a presumption of discrimination arises and the burden shifts to Regus to offer a legitimate,

13  nondiscriminatory reason for her termination.  *Id.* at 307–308.  Assuming Regus sustains that

14  burden, the presumption of discrimination evaporates and the burden shifts back to Steffens

15  to offer additional evidence that Regus's explanation is a pretext for discrimination.  *Id.* at

16  308.

17      The requirement that Steffens establish a prima facie case "is designed to eliminate

18  at the outset the most patently meritless claims, as where the plaintiff is not a member of the

19  protected class or was clearly unqualified, or where the job . . . was withdrawn and never

20  filled."  *Id.* at 307.  The burden here is a light one; minimal evidence suffices to satisfy it.  *Id.*

21  at 310.  "In order to make out a prima facie case of age discrimination under FEHA, a plaintiff

22  must present evidence that the plaintiff (1) is over the age of 40; (2) suffered an adverse

23  employment action; (3) was performing satisfactorily at the time of the adverse action; and

24  (4) suffered the adverse action under circumstances that give rise to an inference of unlawful

25  discrimination, i.e., evidence that the plaintiff was replaced by someone

26  //

27

28

1  significantly younger than the plaintiff."[3]  *Id.* at 321.  The evidence need only allow for a

2  reasonable inference of discrimination.

3         Steffens was definitely terminated by Regus, and she was definitely over 40 when she

4  was terminated.  It's also beyond dispute that she was replaced by someone who was much

5  younger than she — a man in his mid-30s.[4]  (Golgart Dep. 82:4–10.)  To make out a prima

6  facie case that her age was the basis of her termination, she needs only to present evidence

7  that her job performance was satisfactory at the time of her termination.  Much of the

8  evidence Steffens points to, however, the Court finds unavailing.  For example, she cites her

9  "exemplary" performance reviews as an HQ employee during the years 1999-2003, as well

10  as a positive review for 2004, her first year with Regus.  (Opp'n Br. at 5–6.)  Impressive as

11  these commendations may be, they pre-date Steffens's termination by a number of years.

12  Regus terminated Steffens in July 2007 following an evaluation period that was initiated after

13  her October 2006 meeting with Jones and Golgart, and it is that period of time during which

14  Steffens's job performance, and that of the Emerald Plaza center, is material to her age

15  discrimination claim.  However, Steffens  also references her 2006 performance review,

16  dated just three months before her October meeting with Jones and Golgart, which is

17  undeniably positive.  Of the thirteen categories in which her performance was assessed, she

18  received nine "Exceeds Expectation" ratings and 4 "Meets Expectations" ratings.  (Pl. Ex.

19  13.)  Without passing any judgment on the merits of Steffens's age discrimination claim, it's

20  //

21  //

22

23  [3] Regus suggests that in order to establish a prima facie case of discrimination under FEHA, Steffens must show, to satisfy the fourth prong, that her age was a "motivating factor for the adverse action."  (Br. at 15 (citing *Guz*, 24 Cal.4th at 379).)  The Court does not find

24  this language in *Guz*.  In fact, Guz puts the fourth prong this way: "[T]he employer treated younger workers more favorably."  *Id.* at 380.  Regus goes on to argue that Steffens cannot

25  satisfy this prong because the evidence shows the Emerald Plaza center was not "performing up to expectations" (Br. at 17), and because her successor was replaced by a

26  woman who was roughly Steffens's age.  (Br. at 19.)  All of this goes to Regus's rebuttal of Steffens's prima facie case, however; it doesn't nip that case in the bud.

27

28  [4] The Court declines to make anything out of the fact that Steffens's termination was engineered by two men who were much younger than she.  (*See* Opp'n Br. at 23.)  That's less important to the analysis than who took her place at Regus.

1  clear to the Court that she's cleared the low hurdle of making out a prima facie case that her

2  age factored into Regus's decision to fire her.[5]

3        It's equally clear, though, that the ball is immediately back in Steffens's Court,

4  because Regus articulates legitimate, nondiscriminatory reasons for her termination. *Nidds*

5  *v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996).   That reason is the

6  performance of the Emerald Plaza center she managed, and the opinion of her superiors

7  that Steffens wasn't the right person to manage it going forward. Regus points to a

8  substantial amount of evidence that this was its actual reason for terminating Steffens.

9        First, when Golgart and Jones met with Steffens in October 2006, which was Golgart's

10  first chance to meet Steffens and tour the facility, Golgart was unimpressed with Steffens.

11  (*See* Br. at 6–7.) He asked her some basic questions — How are things going here?; What

12  are the areas of opportunity? — and found that she stumbled over her answers.  (Golgart

13  Dep. 116.)  In his eyes, Steffens had no plan for boosting business, and dwelled instead on

14  her complaint that the facility was understaffed and she couldn't devote the appropriate

15  amount of time to sales work.  (Golgart Dep. 117–18; 123–125.)  Steffens also recalls that

16  during this meeting she said she could not focus entirely on sales because the facility was

17  understaffed.   (Steffens Dep. 87:17–20; 93:6–18.)   Regus's Vice President of Human

18  Resources, Sharon Edmondson, recalled that in December 2006 Golgart relayed that he was

19  unimpressed with Steffens during their October 2006 meeting. (*See* Edmondson Dep. 94.)

20        Second, Golgart's impression of Steffens didn't change after a second meeting with

21  Steffens in December 2006.  He again found that she lacked a specific plan for generating

22  business and was generally underwhelmed by her.  (Golgart Dep. 159–162.)  He was

23  disappointed that, following the October 2006 meeting, she didn't go out of her way to make

24  his next visit to the San Diego facility more memorable.  (Golgart Dep. 162.)

25  //

26

27        [5] The Court makes little of the argument that, as a more senior employee, Steffens's high salary may have lurked behind Regus's decision to terminate her.  (*See* Steffens Dep.

28  151:19–24.)  There is certainly evidence that Steffens received a decent salary from Regus, but there is *no* evidence that this factored into her termination.  It is pure speculation that it did.  (Opp'n Br. at 3:4, 4:23–5:4, 23:15.)

1    Third, beyond Golgart's personal interactions Steffens, for the year prior to Steffens's
2    termination, the growth of Regus's San Diego facilities lagged behind the growth of its entire
3    Western Region.  Revenues in the Region were up 12 percent, and profits were up 35
4    percent, but in San Diego these numbers were 3 and 4 percent, respectively.  (Golgart Decl.
5    ¶ 8.)  And, at the Regus facility Steffens managed, revenues were actually down 2 percent
6    and profitability was down 7.4 percent.[6]  (Golgart Decl. ¶ 9.)  The performance of the
7    Emerald Plaza location was the third worst in the San Diego area.  (Golgart Decl. ¶ 9.)  This
8    was particularly disappointing to Golgart given his high expectations for the Regus facility
9    Steffens managed.  (Golgart Dep. 124.)

10    Fourth, in June 2007, after Steffens was placed on a 60-day improvement plan, she
11    spoke over the phone with Sharon Edmondson and again failed to inspire confidence.
12    Steffens initiated this conversation, and during their exchange she expressed concern that
13    the target goals in her action plan were attainable.  (Steffens Dep 216:1–14; 225:21–22.)
14     She reiterated her concerns that the Regus facility was understaffed and that, as a result,
15    she was without adequate assistance to focus on the more important areas of her work.
16    (Edmondson Dep. 28:11–20.)    She acknowledged Regus was losing business but
17    confessed to not having toured Regus's competition in several years.  (Edmondson Dep.
18    40:10–15.)   Edmondsons's impression during and after the call was that Steffens's
19    enthusiasm for her job had waned, and that she was perhaps better fit for a job on the
20    operational side of Regus's business.  (Edmondson Dep. at 41.)  Edmondson's written notes
21    of the meeting recorded her impression that Steffens was "not engaged" and "no longer
22    enjoys coming to work."  (Edmondson Dep. Ex. 3.)

23    "Once the employer has offered a legitimate, nondiscriminatory reason for the adverse
24    employment action, a plaintiff must offer evidence that the employer's stated reason is either

25    _____

26    [6] Steffens objects to the relevance of this evidence on the ground it was not compiled
    until *after* she was fired, and thus couldn't have factored into the decision to fire her.  (*See*
27    Doc. No. 47 ¶¶ 8–9.)  This is a fair point, but the admissible evidence does suggest that
    Golgart had concerns about the performance of the downtown San Diego facility before he
    initiated Steffens's termination, and this hard empirical data just adds content to those
28    concerns, even if he couldn't articulate the numbers at the time.  (*See* Golgart Dep.
    123–124; 206:16–18.)

1  false or pretextual, or evidence that the employer acted with discriminatory animus, or

2  evidence of each which would permit a reasonable trier of fact to conclude the employer

3  intentionally discriminated." *Sandell*, 188 Cal.App.4th at 314 (internal quotations omitted).

4  In other words, to survive summary judgment, Steffens must present enough evidence that

5  would allow a reasonable factfinder to treat Regus's stated justification for firing her with

6  skepticism.  The critical point here is that the *sincerity* of Regus's decision to fire Steffens

7  is at issue, not its *wisdom*; the law forbids discriminatory terminations, not unreasonable

8  ones.  Steffens must therefore present enough evidence to show that Regus's explanation

9  is "unworthy of credence," not that Regus's assessment of her job performance was

10  mistaken or unrealistic.  *See id.*; *see also Odima v. Westin Tuscon Hotel Co.*, 991 F.2d 595,

11  602 (9th Cir. 1993) ("The district court must not substitute its own judgment about whether

12  the employment decisions were wise, or even fair, for that of the employer.")

13       The Court finds that some of Steffens's rebuttal evidence is irrelevant.  For example,

14  she cites her undeniably favorable performance reviews as an HQ employee from the years

15  1999 to 2003, and her 2005 review as a Regus employee.  But Steffens was fired in July

16  2007 following an October 2006 meeting during which Golgart met her for the first time and

17  began to doubt her capabilities, so  Steffens's job performance in these earlier years doesn't

18  help her case.[7]   The Court does find relevant, however, Steffens's favorable performance

19  review in July 2006, which was integral to her prima facie case of age discrimination —

20  although that review, and the accompanying performance-based raise, were executed a full

21  three months before Steffens's October 2006 meeting with Golgart.  Steffens also relies

22  upon the talking points for a "West Region Kick Off Call," which reveal that as late as May

23  2007, revenue at the Emerald Plaza center increased by 22 percent from January 2007.[8]

24

25       [7] The Court will also not consider the disputed question whether Steffens's initial
   placement within Regus constituted a promotion or demotion, considering that Regus

26  acquired HQ in 2004.

27       [8] With respect to this piece of evidence, Steffens asserts that "Golgart *praised*
   Steffens for the performance of the Emerald Plaza Center on a conference call with 50 - 100

28  other General Managers."  (Opp'n Br. at 24.)  The evidence that Golgart actually "praised"
   Steffens comes from the testimony of another General Manager in the San Diego area that
   during the Kick Off Call Steffens was "commended for her high performance."  (Pl. Ex. 31

1   (Pl. Ex. 16.)  Of course, the fact that the Emerald Plaza center was doing better business in

2   May than in January says nothing about whether it was meeting Golgart's absolute

3   expectations, and so the Court finds this to be of limited significance.  And even more to the

4   point, Steffens ignores Golgart's testimony that he is certain the 22 percent number reflects

5   an accounting error and is unreliable.  (Golgart Dep. 206:6–23; 207:6–17; 209:20–24.)

6   Finally, Steffens testifies herself that while she was a Regus General Manager, she

7   "increased annual revenue in Emerald Plaza by approximately 12%-15% almost every year."

8   (Pl. Ex. 30 ¶ 6.)

9         Considering all of the evidence Steffens presents, the Court finds it is insufficient to

10  justify presenting to a jury the question whether Regus fired Steffens on account of her age.

11  Much of Steffens's evidence is not relevant to her performance at the time she was fired by

12  Regus, and her own assessment of her performance merely shows she views her tenure as

13  General Manager of the Emerald Plaza location differently than Regus does, not that

14  Regus's assessment is disingenuous and is a mere pretext for discrimination.[9]  The Court

15  reaches this consideration mindful of several additional factors.  First, Steffens was hired by

16  Regus in her late 40s and fired in her early 50s, meaning she was a member of a protected

17  class during the entire length of her employment, *and* she was ultimately replaced by

18

19

20

21  ─────────────────────

22  ¶ 7.)  The notes of the Kick Off Call, however, do not single out Steffens for commendation, as far as the Court can tell.

23       [9] As evidence of her accomplishments during Regus's employ, Steffens cites to her
24  own resume, which Regus objects to on hearsay grounds.  It's certainly the case that an
    "employee's subjective personal judgments of her competence" cannot defeat summary
25  judgment.  *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).
    Moreover, it is questionable whether Steffens's hard empirical claims are admissible; she
26  should be able to point to something other than her own statements to substantiate them,
    even if she does have relevant personal knowledge of the revenues of the Emerald Plaza
27  location while she was its General Manager.  In fact, Regus argues that Steffens didn't even
    assess the performance of the Emerald Plaza center in the final year of her employment.
28  (*See* Steffens Dep. 189:17–190:20.)  But this is not really the point; even assuming
    Steffens's claims are accurate and admissible, they do not expose Regus's stated
    justification for her termination as a pretext for discrimination.

1 someone who is ten years older than she is, and who remains with Regus to this day.[10]

2 Second, Shannon Jones, who is Steffens's own witness and who opposed her termination,

3 testified that he witnessed no age discrimination at Regus *and* that he was the one who hired

4 Steffens's younger replacement. (Jones. Dep. 79:1–80:13; 203:24–204:4.[11]) Third, Steffens

5 was not the only General Manager of a Regus facility who was terminated when her

6 performance didn't match the company's expectations.  (*See* Golgart Decl. ¶¶ 10–11.)

7 Fourth, there is evidence that before Regus made the decision to terminate Steffens, it was

8 open to offering her another position on the operational side of Regus's business.   If this is

9 true, then it's hard for Steffens to maintain that Regus wanted to be rid of her on account of

10 her age.[12]  (Edmondson Dep. 41:8–13, 42:20–43:24.)

11        For all of these reasons, the Court finds that there is no genuine dispute as to the role

12 Steffens's age played in Regus's decision to terminate her.   At best, there is a reasonable

13 dispute about the fairness of that decision.   Steffens's age discrimination claim under the

14 Fair Employment and Housing Act is therefore **DISMISSED**.

15 //

16

_____

17   [10] It is true that Linda Reid did not assume Steffens's position until after this lawsuit
18 was initiated, but to hold this against Regus would put it in an untenable position.  If it
replaces Steffens with a younger General Manager, it is guilty of age discrimination.  But if
19 it replaces that younger General Manager with someone closer in age to Steffens, it is just
trying to cover up its age discrimination.  Regus shouldn't be required to replace one senior
20 employee with another to avoid a jury trial on the charge that it is ageist.

21   [11] Page 204 of Jones's deposition is actually missing from the exhibits Regus
submitted to the Court, but the Court trusts that its characterization of Jones's deposition
22 (*see* Reply Br. p. 5) doesn't misrepresent the substance of his remarks.

23   [12] Steffens argues Regus never had an available position to offer her, but it is a fair
reading of all of the testimony on this question that the company was open to seeing what
24 it could do, even if that meant making room for Steffens by moving someone out of an
operations role.  (*See* Edmondson Dep. 41:8–13, 43:11–17; Golgart Dep. 154:17–23,
25 155:11–16; Jones Dep. 263:17–264:20.)   The Court should add that it is somewhat
suspicious of Steffens's presentation of the evidence.   She offers a page of Golgart's
26 deposition in which he concedes he told Jones to offer Steffens an operations position even
though none was available, but she does not offer the subsequent page on which Golgart
27 is asked for an explanation. (*See* Golgart Dep. 155:17–25.)  Even if it's *also* a fair reading
of the evidence that Regus's offer of an operations role to Steffens was disingenuous, this
28 would not suffice, in the Court's judgment, to give rise to a triable question of whether's
Steffens's termination was age-related.  In other words, the dispute about the merits and
nature of this offer is not enough to spare Steffens's claim from summary judgment.

1

### C.    Wrongful Termination Claim

The last of Steffens's claims is one for wrongful termination in violation of public policy.  Steffens maintains that her termination, to the extent it was based on her age and her allegations of unlawful employment policies, violated the public policies of California as reflected in sections 1102.5 and 6310 of the California Labor Code, section 12940 of the Government Code (codifying the Fair Employment and Housing Act), the Age Discrimination and Employment Act, and the California Constitution.  The basis for this claims is thin at this point, as the Court has already dismissed Steffens's section 1102.5 claim and her age discrimination claim under the Fair Employment and Housing Act, and her amended complaint dropped her claims for violations of section 6310 and the Age Discrimination and Employment Act.  (*Compare* Doc. No. 14 with Doc. No. 1.)  But there is room for a wrongful termination claim in this case even in the absence of other viable claims.  While Steffens's section 1102.5 claim alleged that Regus terminated her for fear that she would *report* Regus, a more basic wrongful termination claim can allege that she was terminated simply for complaining to Regus in the first place.  *See Gould v. Maryland Sound Industries, Inc.*, 31 Cal.App.4th 1137, 1150 (1995) ("[I]f MSI discharged Gould in retaliation for his reporting violations of the overtime wage law to MSI management, it violated a fundamental public policy of the state.").

To establish a prima facie case of retaliation, Steffens must show that she engaged in protected activity, that she was subjected to some adverse employment action, and that there was a causal link between the two.  *Morgan v. Regents of University of Cal.*, 88 Cal.App.4th 52, 69 (2000).  As with Steffens's claim of age discrimination, "[o]nly after such a prima facie case is made does the case progress to the familiar burden-shifting analysis typically used to test discrimination claims on the merits."  *Chen v. County of Orange*, 96 Cal.App.4th 926, 949 (2002).  But distinct from the age discrimination claim, causation is an integral component of the prima facie case.  *Id.* at 949.

Regus argues that Steffens's wrongful termination claim can't even get off of the ground because she didn't engage in protected activity.  (*See* Br. at 24.)  The Court

1   disagrees. There is sufficient evidence that Steffens told Golgart during their October 2006

2   meeting that she believed Regus's policy of not proving meal and rest breaks to hourly

3   employees was unlawful. (*See* Steffens Dep. 94:6–10 ("And I said I knew it was California

4   law that we have to give breaks."); 108:14–18 ("After I said that there were many days when

5   we couldn't give rest breaks, sometimes lunch breaks, there was work that wasn't getting

6   done, and that it was in violation of California law not to give rest breaks."); Jones Dep.

7   96:1–97:5; 103:19–23; 104:16–20 ("She reported what she felt was happening was not right

8   and was illegal."); 105:16–19.) Steffens's allegations were protected activity for the purpose

9   of her wrongful termination claim. There's no dispute that Steffens was subjected to an

10  adverse employment action, either, meaning the merit of her prima facie case comes down

11  to whether she can show a causal relationship between her protected activity and her

12  termination. The Court finds she can. First, Jones has testified that immediately after

13  Steffens left the October 2006 meeting, Golgart told him to begin looking for a replacement

14  for her. "He said Denise Steffens was a problem. He did not ask me any questions

15  regarding her concerns or invite any discussion."[13] (Jones Dep. 287:5–9.) Second, the

16  adverse treatment of Steffens was initiated in close proximity to the October 2006 meeting.

17  That December, Golgart ordered that Steffens be placed on an improvement plan; she was

18  placed on that plan in April 2007 and fully terminated in July 2007.[14]

19

20      [13] Steffens argues that Golgart's directive to replace Steffens after the October 2006 meeting is *direct* evidence of a causal link between her protected activity and her termination. (Opp'n Br. at 16.) It is hard to see how this is so. Golgart said Steffens "was

21  a problem." He did not say why she was a problem, or why he wanted her replaced. Indeed, the conversation during the October 2006 meeting was hardly limited to Steffens's allegation

22  that Regus was violating California wage laws, so one has to *infer* that it was Steffens's allegations that motivated Golgart to order her replaced, as opposed to his other concerns

23  about her performance and the performance of the Emerald Plaza location. In fact, Jones testified that at no time between the October 2006 meeting and Steffens's termination did

24  Golgart voice displeasure to Jones about Steffens's allegations. (Jones Dep. 132:17–133:2.)

25

26      [14] The parties dispute the extent to which the temporal gap between protected activity and an adverse employment action can, by itself, provide the causal link that is needed to

27  round out a prima facie case of unlawful retaliation. The Court will give Steffens the benefit of the doubt here. *See Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 615

28  (1989) ("The causal link may be established by an inference derived from circumstantial evidence, such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory

1    Granting that Steffens has made out a prima facie case that she was fired for voicing

2    her concerns about Regus's violations of California law, the question then becomes whether

3    the evidence can sustain her position that Regus's stated justification for her termination was

4    pretextual, and that her firing was largely motivated by her complaints about Regus's labor

5    practices.  The Court has already concluded, in considering Steffens's age discrimination

6    claim, that her evidence that she was a high-performing GM of the Emerald Plaza location

7    is of limited value.  At most, it shows there is a genuine dispute as to whether Steffens's

8    termination was reasonable, *not* whether Regus's stated justification for her termination is

9    believable.  That is a critical difference.  Steffens's evidence that Golgart was committed to

10   removing her in October 2006 immediately after their meeting, that the improvement plan on

11   which she was placed was arguably unrealistic, and that Steffens's replacement was hired

12   before she was officially terminated doesn't show, in the least, that the reasons Regus gave

13   for her termination were pretextual.  Perhaps it shows that Regus misled Steffens by

14   presenting her with an opportunity to improve, but that doesn't make Steffens's claim that

15   her termination was based on nefarious reasons any less speculative.  Regus's motion to

16   dismiss Steffens's wrongful termination claim is **GRANTED**.

17   **IV.   Conclusion**

18   Looking at all of the evidence the parties have presented in this case, the Court finds

19   no genuine dispute that Regus's motive for terminating Steffens was unlawful.  That Regus

20   had it out for Steffens because of her age, or because of her allegation that it was unlawfully

21   refusing to provide hourly employees with meal and rest breaks, are wholly speculative

22   claims that, as such, cannot survive summary judgment.  There may be a genuine dispute

23   about how reasonable and fair Regus was in its treatment and ultimate termination of

24   Steffens, but Regus has no legal obligation to be reasonable or fair.  Regus's motion for

25   _____

26   employment decision.") (internal quotations omitted); *Ray v. Henderson*, 217 F.3d 1234,
     1244 (9th Cir. 2000) ("That an employer's actions were caused by an employee's
27   engagement in protected activities may be inferred from proximity in time between the
     protected action and the allegedly retaliatory employment decision.") (internal quotations
28   omitted).  *But see Chen*, 96 Cal.App.4th at 931 ("Mere sequence is not enough-that would
     be the classic logical fallacy of 'post hoc ergo propter hoc' (after the fact, therefore because
     of the fact).").

1    summary judgment is **GRANTED**, and Steffens's claims are **DISMISSED WITH**

2    **PREJUDICE**.

3          **IT IS SO ORDERED**.

4    DATED:  February 16, 2011

5

6                                        **HONORABLE LARRY ALAN BURNS**
                                         United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08cv1494